The order below is hereby signed.

Signed: October 23 2023



_____
Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No. 22-00062-ELG |
| **Cikeithia Berry,**<br>**Debtor.** | **Chapter 13** |

### MEMORANDUM OPINION ON OBJECTION TO PROOF OF CLAIM 7

The Court has before it the remaining portion of the *Objection to Proof of Claim filed by Eddie Jones* (ECF No. 33) (the "Objection") filed by the above-captioned Debtor. On March 2, 2023, after an evidentiary hearing (the "Evidentiary Hearing") on the Objection, the Court entered the *Order Sustaining Objection to Claim Filed by Eddie Jones* (ECF No. 95), which sustained the Debtor's objection to the classification of proof of claim 7 (the "Claim") filed by Eddie Jones ("Mr. Jones") and reserved the question of the amount of the claim to be allowed under § 502 of the Bankruptcy Code.[1] For the reasons stated below, the Court sustains the objection in part as to the amount of the claim, and allows the Mr. Jones's unsecured claim in the reduced amount of $168,300.

---

[1] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

I.      Procedural Background[2]

*a. The Debtor's 2016 Maryland Chapter 13 Case*

The Claim arises out of a business deal between acquaintances to improve and sell real property that the Debtor struggled to maintain mortgage payments prepetition. The property in question—536 Oakwood Street (the "Property")—was a 2-unit residential building in northeast Washington, D.C. originally purchased by the Debtor in 2005. In 2016, the Debtor filed a chapter 13 bankruptcy case in the District of Maryland (the "Maryland Case"), where she listed her residence as an apartment in Maryland. Ch. 13 Vol. Pet. at 2, *In re Berry*, Case No. 16-25684 (Bankr. D. Md. Nov. 30, 2016), ECF No. 1.[3] The Debtor scheduled the Property in her Maryland Case as a non-residential property with a value of $201,275, encumbered by a mortgage with a balance of $178,000. *Id.* at 10, *Berry*, MD ECF No. 1. At the time the Maryland Case was filed, the Debtor was more than $55,000 in arrears on the mortgage on the Property. Ch. 13 Plan and Pre-Conf. Certification, *Berry*, MD ECF No. 2. Prior to the dismissal of the Maryland Case in February 2020, the Debtor paid more than $44,000 towards the mortgage arrears through the case. Ch. 13 Trustee Final Report and Account, *Berry*, MD ECF No. 77.

During the pendency of the Maryland Case, the chapter 13 trustee filed a motion to dismiss for the Debtor's failure to make chapter 13 plan payments, which was initially granted, and then vacated upon a payment of $5,000 to the chapter 13 trustee on behalf of the Debtor. Mot. Dismiss Case for Material Default in Plan Terms, *Berry*, MD ECF No. 44; Order with Notice Dismissing Ch. 13 Case on Mot. of Ch. 13 Trustee for Material Default in Plan Payments After Conf. and Notice that Automatic Stay is Terminated, *Berry*, MD ECF No. 45; Order Vacating Order

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.
[3] Citations to the docket for Debtor's Maryland bankruptcy case will be referred to as "document title, *Berry*, MD ECF No. __".

Dismissing Case, *Berry*, MD ECF No. 50. Earlier in the case, in January 2019 the Debtor fell into

a postpetition default with the secured lender on the Property of over $22,500 and faced a motion

for relief from stay. Mot. for Relief from Stay, *Berry*, MD ECF No. 37. That motion was later

withdrawn in June 2019. Withdrawal of Doc., *Berry*, MD ECF No. 43. Ultimately, the Maryland

Case was dismissed on February 3, 2020 upon the voluntary motion of the Debtor. Mot. Dismiss

Case, *Berry*, MD ECF No. 73; Order Dismissing Case, *Berry*, MD ECF No. 74. There were no

motions to incur debt filed in the Maryland Case, but the dates and timing of the motion to dismiss

and motion for relief are relevant to the issues raised in the Claim of Mr. Jones. Despite the

significant progress in the MD Case, the Debtor sought to voluntarily dismiss the case to allow her

to proceed with the listing and sale of the Property after its renovation. Unfortunately, as discussed

below, the sale of the Property did not close in early 2020 and the Debtor's financial woes

continued, leading to this case.

b. *The Debtor's District of Columbia Chapter 13 Case*

The Debtor commenced this chapter 13 case on April 1, 2022 to stop a foreclosure on the

Property. The Debtor scheduled Mr. Jones as an unsecured creditor on Schedule E/F as an

unliquidated and disputed claim in an unknown amount. Ch. 13 Vol. Pet., *In re Berry*, Case No.

22-00062-ELG (Bankr. D.D.C. Apr. 1, 2022), ECF No. 1; Schedules A/B-J at 14, *In re Berry*,

Case No. 22-00062-ELG (Bankr. D.D.C. May 3, 2022), ECF No. 20.[4] Mr. Jones timely filed a

proof of claim on June 7, 2022, designated as claim number 7 in the official claims register in the

amount of $322,690 for "contract, monies loaned, services performed" and attached an itemization

---

[4] Citations to the docket for this bankruptcy case will be referred to as "document title, D.C. ECF No. __".

and supporting documentation.[5] On May 3, 2022, the Debtor filed her first chapter 13 plan that proposed to "sell [the] property at 536 Oakwood Street, SE, Washington, DC 20032 not later than April 1, 2023, and pay all noted claims." Ch. 13 Plan at 2, D.C. ECF No. 24.[6] The secured creditor on the Property objected to the first plan because the plan understated prepetition arrears on the Property by over $40,000, proposing to cure only $30,000 when the proof of claim stated prepetition arrears of $70,787.31, with a total payoff of over $186,000. Obj. to Conf. Filed by The Bank of New York Mellon, D.C. ECF No. 28.

On August 16, 2022, the Debtor filed her first amended plan and the Objection. Am. Ch. 13 Plan, D.C. ECF No. 32; Obj. to Secured Claim 7, D.C. ECF No. 33. The amended plan once again called for the sale of the Property and drew objections from both the secured lender (on substantially the same grounds) and Mr. Jones on the claim of an interest in the Property and alleging bad faith by the Debtor.[7] On September 13, 2022, three days before the scheduled hearing on confirmation of the amended plan, the Debtor filed her *Application to Employ Pamela Ball as Listing Agent of Samson Properties*. D.C. ECF No. 44. Shortly thereafter, the chapter 13 trustee continued the confirmation hearing to December 16, 2022 and on September 27, 2022, the secured creditor on the Property filed a motion for relief from the automatic stay due to the Debtors failure to make postpetition payments beginning in June 2022 (i.e., all but one-month postpetition). Mot. for Relief from Stay, D.C. ECF No. 47.

---

[5] As stated *supra*, the Claim was filed as a secured claim and the Debtor's objection to classification was sustained, ordering that the Claim is unsecured. Order Sustaining Obj. to Claim Filed by Eddie Jones, D.C. ECF No. 95. The Court will refer to the claim as unsecured for purposes of this Opinion.

[6] This plan also attempted to include a similar statement in section 9.1, but the incorrect box was selected and as such, despite the inclusion of the language in this section, it would not be operative had this plan been confirmed. Ch. 13 Plan, D.C. ECF No. 24.

[7] Mr. Jones simultaneously filed a *Motion Requesting Leave to Late File Objection to Confirmation of Chapter 13 Plan*, seeking permission to have the objection considered by the Court, even though it was filed three days after the objection deadline. D.C. ECF No. 37. Both the motion and objection were amended several times to cure certain filing deficiencies. *See* D.C. ECF Nos. 40, 41, 42, and 43.

The next day, September 28, 2022, the Debtor filed a *Motion to Sell the Property* (the "First Motion to Sell") for a proposed price of $625,000, contingent on a home inspection. Mot. to Sell, D.C. ECF No. 49. On October 27, 2022, the Debtor withdrew the First Motion to Sell, citing "zoning and other unforeseen circumstances" as the reason the sale was unable to close. Req. to Withdraw Doc., D.C. ECF No. 55; Supp. Doc., D.C. ECF No. 56. Although not specified in the withdrawal, the issue with the proposed sale was the classification of the Property as a 2-unit property and not a 3-unit property. The purchaser on the First Motion to Sell submitted an offer for the purchase of the Property as a 3-unit property and the certificate of occupancy was not modified to reflect three units.

On December 14, 2022, the Debtor filed both a *Motion to Sell* (the "Second Motion to Sell") with a proposed sale price of $400,000 and a second amended chapter 13 plan. Mot. to Sell, D.C. ECF No. 61; Second Am. Ch. 13 Plan, D.C. ECF No. 62. The sale proposed in the Second Motion to Sell was as a 2-unit property. On January 3, 3023, the Debtor and Secured Creditor entered into a *Consent Order Terminating Automatic Stay Effective March 1, 2023* (D.C. ECF No. 63) (the "Consent Order"), whereby the parties agreed to a termination of the automatic stay on March 1, 2023, providing the Debtor approximately 60 days to close the sale of the Property.

Shortly after entry of the Consent Order, Mr. Jones, by counsel, filed an Objection to the Second Motion to Sell. Obj. to the Mot. to Sell, D.C. ECF No. 65.[8] On February 1, 2023, the Court entered its Scheduling Order setting an evidentiary hearing on the Debtor's objection to the Claim and the Second Motion to Sell for February 9, 2023. Scheduling Order, D.C. ECF No. 70. The Court held the Evidentiary Hearing on February 9, 2023, February 17, 2023, and February 21,

---

[8] Mr. Jones simultaneously filed a *Motion Requesting Leave to Late File Objection to Contract, Filed December 14, 2022[,] for Sale of Real Property at 536 Oakwood Street, SE, WASHINGTON, DC 20032 (See Related Document # 65)*, seeking permission to have the objection considered by the Court, even though it was filed two days after the objection deadline. D.C. ECF No. 61.

2023, at the conclusion of which it sustained the objection to the classification of the Claim, approved the Second Motion to Sell, and took this matter under advisement. Order Approving Sale of 536 Oakwood Street, SE, D.C. ECF No. 87; Order Sustaining Obj. to Claim Filed by Eddie Jones, D.C. ECF No. 95. After the entry of the Court's Orders approving the Second Motion to Sell and sustaining the objection to classification, in April 2023, the Court confirmed the Debtor's Fifth Amended Chapter 13 Plan, overruling Mr. Jones's objection. Order Confirming Plan, D.C. ECF No. 107. The sale of the Property closed on March 20, 2023 for $400,000, with the net proceeds distributed to the chapter 13 trustee for payment through the confirmed plan upon the Court's determination of the allowed amount of Mr. Jones's claim.

## II.      Amounts Claimed by Mr. Jones

Over time, the total Mr. Jones alleges the Debtor owes him has varied. The first total dollar figure stated by Mr. Jones was $385,250, without itemization, listed in the Lis Pendens filed on the Property, discussed *infra*. In this case, Mr. Jones's Claim is for $322,690 is calculated as follows (all terms defined *infra*): $161,000.00 under the May 2019 Note; $7,300.00 under the Second Addendum; $8,500.00 in Direct Payments to the Debtor's mortgage holder; $20,797.51 of renovation expenses[9] termed "the responsibility of the owner"; $39,037.00 interest at 10 percent for December 30, 2019 to May 31, 2022 on the $161,000.00; $2,234.00 interest at 10 percent from December 31, 2020 for "additional $15,800 paid on [Debtor's] behalf"; $8,821.17 in attorneys' fees and costs through May 2022; $5,000.00 for estimated repair costs; and $70,000.00 "(estimated/projected)" associated with a projected 55 percent split of proceeds on the Property (based upon a $625,000.00 purchase price). In essence, Mr. Jones's Claim breaks down into the following categories: (i) claims for payments to or on behalf of the Debtor; (ii) claims for payments

---

[9] This sum is further broken down as follows: $9,999.99 for architectural fees; $7,500.00 for attorney/expeditor; $3,240.81 for permits, et. al; and an unidentified $56.71.

to or on behalf of improvements in the Property; (iii) claims for contractual interest and attorneys'

fees; and (iv) a claim in alleged equity in the Property if the Property sold for more than $500,000.

Because the sales price of the Property was $400,000, the portion of the proof of claim attributable

to this final category is denied as moot.

       *a.*     *Payments Made by Mr. Jones to or on Behalf of the Debtor*

During early 2019, while the Maryland Case was pending, the Debtor began working with

Mr. Jones to renovate the Property from 2-units to 3-units to be sold. There was no construction

loan or other financing for the renovation, instead the costs were paid by the parties, primarily Mr.

Jones. At best, the record keeping as to the parties' agreement and payments made was informal,

with much of the evidence at the Evidentiary Hearing based upon testimony and not on

documentary evidence. Upon a review of all of the admitted exhibits and the testimony of the

parties, the Court makes the following findings regarding the transactions between Mr. Jones and

the Debtor with respect to the Property.

On or around May 2, 2019, Mr. Jones issued a check payable to the Debtor in the amount

of $36,000 on which he noted it was for an "Investment". Ex. M, D.C. ECF No. 73–13. The

Debtor's position is that that the payment was an investment in the renovation of the Property. Mr.

Jones's position is that notwithstanding the notation on the check, the payment was a loan as

provided for in a Note dated May 2, 2019 (the "May 2019 Note"). An executed original or copy

of the May 2019 Note was not produced at the Evidentiary Hearing. The only copy of the May

2019 Note introduced was an unsigned copy of what Mr. Jones argues is an accurate representation

of the May 2019 Note together with an affidavit from interested party Nicole Sarr that she was a

witness to the execution of the original document by both Mr. Jones and the Debtor. Ex. J, D.C.

ECF No. 73–10.

Upon review of the May 2019 Note, it categorizes $36,000 payment as a loan, calls for a repayment of the loan in the amount of $161,000 due on December 30, 2019, states loan was "secured" on the Property,[10] with interest on default, and contains a prevailing party attorneys' fees clause. Ex. J, D.C. ECF No. 73–10. The testimony at the hearing was conflicting as to whether the document identified as the May 2019 Note is an accurate copy of the original note. The Debtor could only remember signing "a lot" of documents. The Court does believe that a document was signed by the Debtor and Mr. Jones in May 2019 concurrently with the $36,000 payment, but given that the amount due at the end of the document introduced as the May 2019 Note references a balance to be paid exactly equal to that set forward in a later note, the Court questions whether the May 2019 Note is a true an accurate copy of the document executed in May 2019.

The funds from the purported May 2019 Note from Mr. Jones were used as follows: $28,000 to cure the Debtor's deficiency on the mortgage on the Property incurred during the Maryland Case (presumably resulting in the withdrawal of the motion for relief from stay in June 2019); and $8,000 to cure a then-existing plan default with the chapter 13 trustee in the Maryland Case. The Debtor never disclosed or otherwise obtained approval from the Maryland Bankruptcy Court of the Debtor's agreement with Mr. Jones.[11]

Sometime between May 2, 2019 and September 19, 2019, the Debtor and Mr. Jones agreed to modify their agreement. An undated document called Addendum to the Promissory Note Dated May 2nd, 2019 allegedly documented the modification (the "First Addendum"). Ex. K, D.C. ECF No. 73–11. However, the version of the First Addendum produced in this case is unsigned,

---

[10] There is no evidence that the May 2019 Note, or any related security document, was ever executed or recorded with the District of Columbia recorder of deeds, and as a result the Court has previously ruled that any obligation owed to Mr. Jones by the Debtor is an unsecured claim. Order Sustaining Obj. to Claim Filed by Eddie Jones, D.C. ECF No. 95.

[11] *See generally*, *In re Berry*, Case No. 16-25684 (Bankr. D. Md.) (no motions to sell or incur debt in connection with the Property).

undated, and contains only a signature line for Mr. Jones.[12] Despite the stated issues, the First

Addendum called for Mr. Jones to "invest" another $75,000 in the Property for renovations, for a

total investment of $111,000. In addition to his financial investment, Mr. Jones agreed to procure

all necessary permits related to the renovations of the Property. In return, the First Addendum

called for (i) Mr. Jones to be added to the deed of the Property; (ii) the payment to Mr. Jones of

$161,000 upon sale of the Property; and (iii) the Property to be listed for at least $500,000, and if

sold for more than $500,000, Mr. Jones would be paid half the "profit." Ex. K, D.C. ECF No. 73–

11 at 1. Unlike the May 2019 Note, there is no evidence of a direct payment from Mr. Jones to or

on behalf of the Debtor of the $75,000. There was, however, clear and uncontested evidence that

renovations were undertaken on the Property in late 2019, with a final completion date of

December 13, 2019. While there is a disagreement between the parties of the amount and scope of

the payments, both the Debtor and Mr. Jones agreed that Mr. Jones made some payments for such

renovations to be completed. Once again, no disclosure was made or motion for approval of this

arrangement was sought in the Debtor's Maryland Case.

On September 19, 2019, the Debtor and Mr. Jones executed what is titled a 2nd Addendum

to the Promissory Note Dated May 2nd 2019 (the "Second Addendum"). Ex. L, D.C. ECF No. 73–

12. Mr. Jones's position is that the Second Addendum represents the second amendment to the

May 2019 Note, but this is the first document introduced in this case executed by either party to

the agreement. In the Second Addendum, Mr. Jones agrees to provide the Debtor with another

$5,300 ($5,000 of which was to be paid directly to the Debtor's Maryland chapter 13 trustee and

---

[12] A written contract is only enforceable against a party who has signed the agreement. Even though a signed writing is not *essential* to the formation of a contract, the evidence at the Evidentiary Hearing was insufficient to show there was a meeting of the minds as to the First Addendum. *See United House of Prayer for All People v. Therrien Waddell, Inc.*, 112 A.3d 330, 338 (D.C. App. 2015); *Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc.*, 206 A.D. 2d 166, 169 (N.Y. App. Div. 1994) ("The party seeking to enforce a contract bears the burden to establish that a binding agreement was made and to prove the terms of the contract.").

the remaining $300 to be paid to her counsel). In exchange, the Second Addendum calls for a

"profit" split upon sale of the Property of 45 percent to the Debtor and 55 percent to Mr. Jones, as

well as an increase of the total amount due from the Debtor to Mr. Jones to $168,300. On or about

September 18, 2019, a $5,000 payment to the chapter 13 trustee was made by a cashier's check

from Mr. Jones and his wife's account (apparently resulting in the first dismissal of the Maryland

Case being vacated by the Maryland Bankruptcy Court). *See* Ex. N, D.C. ECF No. 73–14. There

was no further evidence of the $300 payment allegedly made to the Debtor's Maryland counsel.

Neither the Second Addendum, nor the obligations related thereto were approved in the Maryland

Case.[13]

As noted above, most of the renovations to the Property were completed by mid-December

2019. Nevertheless, the Debtor continued to have problems paying the mortgage on the Property.

As a result, on December 3, 2019, Mr. Jones paid $6,700 directly to the mortgage holder on the

Debtor's behalf, and on January 10, 2020 made a further payment of $2,800 to the lender. Ex. P,

D.C. ECF No. 73–16. It does not appear that there was ever any written agreement as to the

repayment of these amounts.

Despite substantial testimony on the discussions and understanding of any agreement with

the parties, the only written evidence of payments by Mr. Jones to or on behalf of the Debtor were

copies of checks and/or remittances for the $36,000 payment to the Debtor, $5,000 payment to the

chapter 13 trustee in the Maryland Case, and the two direct payments to the mortgage holder

($6,700 and $2,800) (the "Direct Payments"). D.C. ECF Nos. 73–13, 73–14, and 73–16. In

---

[13] The Court notes that the Maryland Case was dismissed for a period of five days between September 19 and
September 24, 2019, such that at the time the Second Addendum was executed, the Debtor may not have been
obligated to seek approval thereof with the Maryland Bankruptcy Court. However, upon the dismissal order being
vacated, it was as if the Maryland Case had not been dismissed, and the Debtor would have had an obligation to
disclose the existence of the Second Addendum entered into during the dismissal period.

addition, it is clear from the Debtor's execution of the Second Addendum that she agreed Mr. Jones loaned her $300 to be paid to counsel.

   b.   *The Repairs and Renovation of the Property*

There is no dispute that during the second half of 2019 the Property was completely renovated after demolition of the interior. The Property is a three-story building originally consisting of two units, but through the renovation, Mr. Jones and the Debtor intended to create three separate, independent one-floor units. Mr. Jones supervised the renovation of the Property and employed Sarr Construction Group, LLC, owned by Nicole Sarr, as the general contractor. In addition, Mr. Jones personally, or through agents controlled by him, obtained all of the permits allegedly necessary for the renovation. Through the renovation process the Property was substantially gutted, the interiors rebuilt, and a third kitchen added. Upon completion of the renovation, but prior to the issuance of a certificate of occupancy by the District of Columbia, the Debtor entered into a listing agreement with Ms. Sarr and Compass Real Estate on December 13, 2019, with a "go live date" of January 3, 2020 to sell the building as a 3-unit property.[14]

The Property was listed for sale on January 3, 2020 as a three-unit property, and by February 2, 2020 the Debtor had entered into a fully ratified contract with a potential purchaser for $625,000 with a 40-day closing contingency. Ex. C, D.C. ECF No. 73–2. As a result of the contract, the Debtor sought and received a voluntary dismissal of the Maryland case so that the sale could go forward without the perceived interference of the bankruptcy court. After dismissal of the Maryland Case and during the due diligence period, it was disclosed that the Property did

---

[14] Once again, the Debtor did not seek approval to enter into the employment relationship with Ms. Sarr and Compass Real Estate from the Maryland Bankruptcy Court. At the Evidentiary Hearing, Ms. Sarr testified at length about the steps she took to ensure that the Property sold for its highest and best value, including the personal funds she invested into staging the Property, but for which she did not seek payment from the Debtor's estate in this case by filing a proof of claim.

not have a three-unit certificate of occupancy. As a result, on March 1, 2020, Mr. Jones entered

into a contract with a "consultant" to assist with obtaining the necessary certificate of occupancy

for an initial cost of $7,500. Ex. S, D.C. ECF No. 73–19. The evidence is unclear as to whether

Mr. Jones undertook this effort on a new request of the Debtor, as part of his prior offer to "obtain

all permits," or independently as an effort to protect his financial position in the Property. Despite

the engagement and payment for the consultant to obtain a 3-unit certificate of occupancy, no

certificate of occupancy was issued, and the second sale contract was canceled due to delay. At

that point the Debtor found herself without a sales contract, with a property that did not meet the

expectations of the purpose of the renovation, and outside the protection of the bankruptcy court.

Over the next period of approximately a full-year, the parties worked to obtain a three-unit

certificate of occupancy so that the Property could be sold at the anticipated renovated price.

However, such certificate was never issued. While it is unclear as to the status of the payments on

the mortgage loan, given the extent of the alleged arrears by the secured lender, it appears that the

Debtor benefitted from the mortgage foreclosure moratorium due to the COVID-19 pandemic. In

July 2021, Mr. Jones filed a *lis pendens* against the Property, listing a claim of $385,250 with

refence to District of Columbia Superior Court Case 2021-CA-002429B for "breach of contract

suit for performance" (the "Lis Pendens"). Ex. AB, D.C. ECF No. 73–28. Later that month, a third-

party inspector for the District of Columbia completed a final inspection of the Property and

recommended a certificate of occupancy be issued for "1 dwelling unit and one additional unit"

(i.e., only two independent units). The Property was not approved for three units because of a lack

of an independent entry for the basement unit. Ex. U, D.C. ECF No. 73–21. Thus, without further

modifications or a zoning waiver, the Property would remain approved only for two units (one

with two independent kitchen areas). By April 2022, the mortgage moratorium was lifted, and the Debtor faced foreclosure on the Property, prompting the filing of this case.

As part of her chapter 13 case, in September 2022, the Debtor obtained a third contract to purchase the Property for $625,000 as a three-unit property. The Debtor filed a motion in this case to approve the sale pursuant to the third contract, but that motion was ultimately withdrawn when the unit count and "other unforeseen circumstances" came to light. Two months later, in November 2022, the Debtor obtained a contract for purchase of the Property as a two-unit building for $400,000, which this Court ultimately approved by order entered February 22, 2023. Order Approving Sale of 536 Oakwood Street, SE, D.C. ECF No. 87. As set forth *supra*, the sale of the Property for $400,000 closed in March 2023 free and clear of liens, including the Lis Pendens, with the net proceeds paid to the chapter 13 trustee for distribution. *See* Report of Sale, D.C. ECF No. 99.

The question then turns to which portions of the claimed amounts for payments on or on behalf of the improvements to the Property were proven at the Evidentiary Hearing. Mr. Jones presented evidence and testimony for labor costs, material costs, and related permitting or other costs, not including those for the roof or HVAC units. The renovation was completed utilizing Ms. Sarr's company as the general contractor. The labor for the majority of the work was subcontracted to Mr. Alvarado's company, Anthony Alvarado Electric, LLC, with the materials supplied by orders to major retailers and paid for directly by Mr. Jones.

With respect to the labor costs for the renovation, the evidence at the Evidentiary Hearing was inconsistent as to the amount paid by Mr. Jones to the subcontractor. In his testimony, Mr. Jones referred to a spreadsheet in support of his claimed amounts. Ex. Q, D.C. ECF No. 73–17. The spreadsheet contains purported receipt numbers and amounts, but the only evidence

substantiating the information therein was the testimony of Mr. Jones stating that he created the spreadsheet from his "records."[15] There is no evidence that the receipts were solely for expenses related to the Property or that the information contained in the spreadsheet is accurate. The spreadsheet and Mr. Jones's testimony assert that he made total payments for labor on the Property of over $161,000. Conversely, the testimony from the subcontractor, Mr. Alvarado, whose team completed substantially all the renovation, was that his crew received a total of $45,000 for labor. The Court finds Mr. Alvarado's testimony more credible on this matter and will limit any total for labor to no more than $45,000.

Turning to materials, Mr. Alvarado testified that the system under which he operated at the Property was as follows: i) he would request materials for the work; ii) Mr. Jones would purchase the materials; and iii) the materials would be delivered to the Property at the direction of Mr. Jones. Mr. Alvarado had no knowledge of the amounts expended for supplies. Thus, the Court can only evaluate the total cost of materials based upon the testimony of Mr. Jones. Relying again upon his spreadsheet, Mr. Jones testified that he paid $55,770.87 for materials from either Lowe's or Home Depot. However, the evidence at the Evidentiary Hearing did not substantiate or otherwise provide any identification of what the alleged payments were for, when the payments were made, and whether such payments were actually attributable to the Property. The Debtor concedes and the photographic evidence does show the completion of a complete renovation of the Property with new materials. Without any details or evidence other than the spreadsheet as to the amounts expended, the best the Court can do is affix a value it finds equitable under the circumstances to

---

[15] Mr. Jones filed multiple exhibits after the conclusion of Evidentiary Hearing. Given the late nature of the exhibits and the fact that they were not admitted into evidence, these exhibits are not considered in this Opinion. D.C. ECF Nos. 114, 116, 117, 119.

represent compensation for materials. Based upon the testimony and evidence, the Court will find that the maximum allowable total amount for materials equal to that of labor—$45,000.

Receipts and/or agreements were introduced into evidence for the following additional expenditures by Mr. Jones related to the Property: Alteration and Repair Permit ($346.50) (Ex. B, D.C. ECF No. 73–6); Consulting Retainer/Agreement ($7,500.00) (Ex. R, D.C. ECF No. 73–18 at 4.); and construction drawings/permit drawings for the Property ($10,000.00) (Ex. R, D.C. ECF No. 73–18 at 1–3.). Mr. Jones's spreadsheet lists a number of other permits, none of which are substantiated by any further admitted evidence or proof of payment. Therefore, the Court finds that the maximum total for payments for other costs for the renovation is $17,846.50. When combined with the other amounts herein, the Court finds that the evidence at the Evidentiary Hearing supports a maximum total for actual payments made by Mr. Jones of $158,646.50.[16] The claims for contract interest and attorneys' fees are legal questions addressed *infra*.

### III.    Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[16] Calculated as follows: $36,000 check from Mr. Jones to Debtor (Ex. M, D.C. ECF No. 73–13); $5,000 check to the chapter 13 trustee in Debtor's Maryland Case (Ex. N, D.C. ECF No. 73–14); $300 to Debtor's attorney in the Maryland Case (Ex. L, D.C. ECF No. 73–12); Direct Payments of $6,700 and $2,800 (Ex. P, D.C. ECF No. 73–16); $45,000 for labor on the Property; $45,000 for materials to renovate the Property; and $17,846.50 of other costs including Property: Alteration and Repair Permit ($346.50) (Ex. B, D.C. ECF No. 73–6); Consulting Retainer/Agreement ($7,500.00) (Ex. R, D.C. ECF No. 73–18 at 4.); and construction drawings/permit drawings for the Property ($10,000.00) (Ex. R, D.C. ECF No. 73–18 at 1–3.).

## IV.    Discussion

### *a.    Legal Standard*

A creditor's filing of a proof of claim creates prima facie evidence of the amount and validity of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The Debtor does not contest that the claim filed by Mr. Jones was sufficient to meet the prima facie standard for allowance. A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). The burden then shifts to the objecting party to introduce evidence to rebut the claim's validity. *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F. 3d 637, 640 (4th Cir. 2004) (citing *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 404 (4th Cir. 1992)). An objecting party must produce sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). "In practice, the object[ing party] must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992); *see also Diamant v. Kasparian (In re So. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1248 (9th Cir.1999) (although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity). Once an objecting party produces sufficient evidence to rebut one or more of the aspects of the proof of claim, the creditor has the burden of proving the amount and validity by a preponderance of the evidence. *Stancill*, 372 F.3d at 640 n.2. *See also Allegheny Int.*, 954 F.2d at 174.

The Objection raises both factual and legal issues with the Claim, including the lack of documentation sufficient to establish a security interest, which was addressed in the Court's *Order Sustaining Objection to Claim Filed by Eddie Jones*. *See* D.C. ECF No. 95. Relevant to this

Opinion, the Objection questions the nature and extent of any agreement between the parties as well as the character of the agreement.[17] The Court finds that the Objection combined with the corresponding testimony and evidence at the Evidentiary Hearing is sufficiently specific to shift the evidentiary burden back to Mr. Jones to prove the validity of the Claim by a preponderance of the evidence.

b.    *Claim for "Contract, Monies Loaned, Services Performed"*

Mr. Jones's Claim for the amount of $322,690 is described as for "contract, monies loaned, services performed" without distinction between the categories. At the Evidentiary Hearing, the argument was clear that Mr. Jones's theory was a contract existed for payment for monies loaned and services performed. It is within this context that the Court analyzes Mr. Jones's claim. The Claim for contract interest and attorneys' fees would be allowable under District of Columbia law only if a contract existed between the parties that provided for such amounts. The analysis of the allowance of Mr. Jones's Claim therefore begins with a determination of whether a contract existed between the parties, and if so, the terms of any such contract. Mr. Jones alleges that there was a written contract between the parties with two addendums, or, in the alternative, there was an oral contract for substantially the same terms as the alleged written contract.

Under District of Columbia law, for a written contract to be enforceable, the parties to the contract must (1) express an intent to be bound, (2) agree to all material terms, and (3) assume mutual obligations. *EastBanc v. Georgetown Park Assocs.*, 940 A.2d 996, 1002 (D.C. 2008) (citations omitted). Material terms, including subject matter, price, payment terms, and duration, must be "sufficiently definite" to allow each party to be certain about the promises between the

---

[17] The Objection concludes with the general statement that "[t]here are numerous other reasons for sustaining Debtor's objection as to the amount of the claim" without further elaboration. This statement, on its own, is insufficient to meet the standard required to shift the burden of proof. Objection at 4, D.C. ECF No. 33.

parties and to allow courts to understand the contract, determine if there was a breach, and identify obligations to enforce. *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 370 (D.C. 1990). The parties must have expressed their intentions in a manner the court is capable of understanding, and it is not enough that the parties think there is a written contract if the court cannot interpret what the terms are of the written agreement. *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 253 (D.C. App. 2005) (citing *Rosenthal*, 573 A.2d at 369–70). Vagueness of expression, indefiniteness, and uncertainty as to any of the essential terms of the agreement have been held to prevent the creation of an enforceable contract. *Id.* Mutual assent to a contract is most clearly evidenced by terms of a signed written agreement, but such writing is not essential to the formation of a written contract under District of Columbia law. *See B&S Blass, Inc. v. Del Metro*, 2021 WL 3268360, *4, 2021 U.S. Dist. LEXIS 142146, *13 (D.D.C. July 30, 2021) (quoting *Sturdza v. U.A.E.*, 281 F.3d 1287, 301 (D.C. Cir. 2002) (internal punctuation omitted) which quotes *Davis v. Winfield*, 664 A.2d 836, 837 (D.C. 1995)).

At the Evidentiary Hearing, Mr. Jones introduced the May 2019 Note, the First Addendum, and Second Addendum in support of his Claim. Due to the incomplete nature of the documents. Both the Debtor and Mr. Jones testified as to their understanding and belief on the agreement between the parties including their understanding of the written contract. *See* Fed. R. Evid. 1004. Based upon a review of the documents and the testimony, the Court finds that Mr. Jones has shown by a preponderance of the evidence that the Second Addendum includes sufficiently definite terms, is executed by both parties evidencing an intent to be bound by its terms, and therefore is a valid contract between the parties for the terms and conditions contained therein. Conversely, the evidence, including the testimony of the parties, was insufficient to establish that the May 2019 Note or the First Addendum are enforceable written contracts.

Mr. Jones urges the Court to accept the May 2019 Note, and all its included terms, as a lost contract and therefore enforceable. Under District of Columbia law, if a contract is lost, the party seeking to enforce the contract must first provide a satisfactory explanation for failing to produce the lost contract. *Alvin Epstein Advertising v. Helfer*, 138 A.2d 925, 927 (D.C. App. 1958). Thereafter, parol evidence is admissible to prove the contents and existence of a writing that was lost or destroyed, but that evidence must be clear and convincing. *Mark Keshishian & Sons, Inc. v. Wash. Square, Inc.*, 414 A.2d 834, 840 (D.C. 1980). The Court finds that Mr. Jones has failed to meet these requirements in two material ways.

First, Mr. Jones's explanation for not retaining the original was that he simply could not find it. However, the Court is not convinced from the testimony that the document introduced as the May 2019 Note was a true an accurate copy of the original note. There was no explanation how the alleged total amount of the Debtor's indebtedness to Mr. Jones after the alleged First Addendum ($161,000) appeared in the note allegedly executed in May 2019. The total amount allegedly loaned to the Debtor under the May 2019 Note was $36,000, and yet the note includes a total repayment amount of $161,000. Ex. J, D.C. ECF No. 73–10. Mr. Jones could not explain this inconsistency in the document he asks the Court to accept as a copy of the "lost note." Therefore, although the Court accepts the testimony that the parties executed *a* note in May 2019, the Court finds that the evidence is insufficient to find that the May 2019 Note admitted at the Evidentiary Hearing is the document that was executed in May 2019. Based upon the conflicting testimony of Mr. Jones and the Debtor, the Court finds that there is not clear and convincing evidence that the Debtor agreed to the terms contained in the May 2019 Note. Therefore, because there is no enforceable version of the May 2019 Note in this case, the Court finds that the May 2019 Note is not an enforceable contract between the parties.

A similar analysis applies to the First Addendum. The document itself is insufficient to prove the existence of a written contract between the parties, and the testimony at the Evidentiary Hearing was conflicting as to the terms contemplated by the parties. Again, the Court does not question that there was *a* modification of terms discussed between the parties, but the evidence is insufficient to find that the unsigned, undated First Addendum is a written manifestation of any agreed modification or agreement.

Conversely, Mr. Jones has shown by clear and convincing written and testamentary evidence that the Second Addendum is a written contract between Mr. Jones and Debtor as to the $5,300 paid by Mr. Jones on behalf of the Debtor in paragraph 1 of the document. The testimony made clear that the parties intended for the payment to represent a loan that would be repaid by the Debtor to Mr. Jones. The Second Addendum also represents a mutual agreement as to the "profits for sale" of the Property, now moot due to the sale of the property previously approved by this Court. However, the final term of the contract as to the reimbursement of the sum of $168,300 presumably makes reference to the May 2019 Note and/or the First Addendum, and such terms were not substantiated or clarified at the Evidentiary Hearing. The question is whether such language is ambiguous, or whether the Debtor's agreement to pay Mr. Jones $168,300 is enforceable.

Under District of Columbia law,

A contract is not ambiguous merely because the parties disagree over its meaning, and courts are enjoined not to create ambiguity where none exists. . . . Rather, a contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends. . . . Accordingly, [t]he first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant.

*Wash. Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 548 (D.C. 2000) (internal citations and quotation marks omitted.). Applying this standard to the Second Addendum, the Court finds that a reasonable person in the place of the parties at the time of execution of the Second Addendum would have understood that the Debtor agreed to repay to Mr. Jones a total principal amount of $168,300 and the Court grants Mr. Jones an unsecured claim in that amount.[18] The Second Addendum then adopts "all other terms." However, because the Court finds that the May 2019 Note and First Addendum are not written contracts, the only ability for Mr. Jones to recover more than the allowable principal, specifically attorneys' fees and interest, is if there was an oral contract between the parties for those charges.

Without a written contract for attorneys' fees or interest, the Court must determine whether there was an oral contract for either interest or attorneys' fees. In the District of Columbia "[the] parties may be bound by their oral agreement if it meets the dual requirements of intent and completeness. However, the party asserting the existence of a contract has the burden of proof on that issue. Where the parties contemplate a subsequent written contract, this burden is particularly onerous." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) (citations omitted).

At the Evidentiary Hearing, consistent with the Second Addendum, the Debtor conceded that she agreed to repay Mr. Jones the amounts "loaned," as well as funds invested in the improvement of the Property. However, the testimony was conflicting as to whether the Debtor agreed to pay Mr. Jones interest and/or attorneys' fees associated with the collection of such

---

[18] If the Second Addendum was not enforceable, Mr. Jones would otherwise be entitled to a claim in this case in an amount no less than $158,646.50 under the equitable doctrine of unjust enrichment. The elements of a claim for unjust enrichment are "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Comms., Inc. v. Thompson*, 878 A.2d 1218, 1222 (D.C. 2005). The Court accepts that the Debtor voluntarily agreed to pay Mr. Jones an amount more than the total amount of the benefit conferred by Mr. Jones as determined herein.

amounts. Given the parties' inconsistent statements, Mr. Jones has failed to prove by a preponderance of the evidence that there was an oral contract for interest or attorneys' fees between himself and the Debtor. Therefore, the portions of Mr. Jones's claim for interest and attorneys' fees must be denied.

## V.    Conclusion

Therefore, for the reasons set forth herein, the Court GRANTS the Objection in part and allows claim number 7 as an unsecured claim in the amount of $168,300.

[Signed and dated above.]

Service to: counsel of record; Debtor.